The LAC DU FLAMBEAU BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, a federally recognized Tribe, and the Bad River Band of Lake Superior Chippewa Indians, a federally recognized Tribe, Plaintiffs,

v.

Gail NORTON, in her official capacity as Secretary of the Interior, and United States Department of the Interior, Defendants,

and

Ho–Chunk Nation, Intervenor.

No. 03–C–0588–C.

United States District Court, W.D. Wisconsin.

July 30, 2004.

Carol J. Brown, Kevin Osterbauer, Michael P. Murphy, Lester J. Marston, for Plaintiffs.

Richard D. Humphrey, Assistant U.S. Attorney, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action brought by two bands of the Lake Superior Chippewa Indians, the Lac du Flambeau and the Bad River, each of which is a federally recognized tribe. Plaintiffs are appealing what they characterize as a final agency action approving an amended gaming contract between the State of Wisconsin and the Ho–Chunk Nation. Defendants Gail Norton and the United States Department of the Interior have moved to dismiss the action on a number of grounds: (1) plaintiffs cannot challenge the approval of the amended gaming contract at issue under the Administrative Procedure Act; such challenges can be brought only against final agency *actions* and the amendment was approved by default when defendant Norton failed to act on the matter within 45 days; (2) plaintiffs have failed to join the State of Wisconsin and the Ho–Chunk Nation as necessary parties; (3) both the state and the Ho–Chunk Nation are indispensable parties that cannot be joined as defendants in this case because both have sovereign immunity from suit; (4) plaintiffs have failed to plead reasons for not joining the state and the Nation as parties as required under Fed.R.Civ.P. 19(c); and (5) plaintiffs have no standing to bring this action because they are unable to make the requisite showings for standing: they have suffered injury in fact; their injury is fairly traceable to defendants' actions; and their injury can be redressed by a favorable decision. Intervening defendant Ho–Chunk Nation has moved to dismiss on the grounds that it is a necessary party to the litigation, that its sovereign status makes it immune from suit and that its indispensability requires dismissal of the suit.

I conclude that any one of the following objections would be sufficient to support dismissal. The department's "approval" was not a final agency action subject to challenge under the Administrative Procedure Act; the state of Wisconsin is not only a necessary party but an indispensable one, as is the Ho–Chunk Nation, but neither can be made defendants to this suit because both have sovereign immunity; and plaintiffs have failed to show that they suffered injury in fact. Therefore, I will grant defendants' motion to dismiss the case.

Reading the allegations of the complaint liberally as I must, I find that plaintiffs have fairly alleged the following facts.

## ALLEGATIONS OF FACT

Plaintiffs Lac du Flambeau Band of Lake Superior Chippewa Indians and Bad River Band of Lake Superior Chippewa Indians are federally recognized Indian Tribes, organized pursuant to the Indian Reorganization Act, 25 U.S.C. §§ 461–494. Defendant Gail Norton is the Secretary of the Interior of the United States. She has overall responsibility for the management of certain Indian affairs, including matters arising out of relations between the various tribes and the United States.

Both plaintiffs conduct Class III gaming on their reservations pursuant to compacts with the state of Wisconsin. Both have off-reservation fee-to-trust applications for gaming purposes pending before the Bureau of Indian Affairs. ("Fee-to-trust" refers to lands to be purchased and taken into trust by the government on behalf of plaintiffs and used for gaming operations.) The Ho–Chunk Nation and the State of Wisconsin are parties to the Gaming Compact of 1992. On April 25, 2003, the Nation submitted a Second Amendment to the compact to defendant Secretary for review and decision pursuant to 25 U.S.C. § 2710(d) and in accordance with 25 U.S.C. § 2701(5). The deadline for an affirmative or negative ruling on the Second Amendment was June 8, 2003, 45 days after the submission of the amendment. Paragraph 16 of the amendment memorialized the state's agreement not to concur in any positive determination made by the Secretary of the Interior that it would be in the best interest of a tribe other than the Nation to establish gaming on off-reservation trust lands acquired by the United States after January 1, 2003, if the Nation advises the state that the operation of the proposed establishment would cause a substantial reduction of Class III gaming revenues at any of the Nation's existing facilities. The provision includes an exception when "that other tribe has entered into a binding agreement with the Nation to compensate it for the loss of revenue, if any, it will incur as a result of the other Tribe engaging in gaming activities at the off-reservation site."

After several tribes objected to the anti-competitive nature of the proposed amendment, the state and the Nation submitted a revised Paragraph 16, deleting the exception and substituting a provision that before the state could concur in any positive determination, it would have to enter into a binding agreement to indemnify the Nation for the reduction in revenue. Plaintiff Lac du Flambeau submitted a written objection to the revised Paragraph 16. On the same day, the Nation wrote defendant Secretary to urge her to allow the paragraph to be go into effect by operation of law. The Nation suggested that if she did so, the approval could not be the subject of a lawsuit because the lack of indispensable parties and the sovereign immunity of those parties would bar any suit. The revised Second Amendment was deemed approved when defendant Secretary took no affirmative or negative action before the end of the day, June 8, 2003.

Plaintiffs seek as relief an order declaring Paragraph 16 void because it unlawfully grants privileges and immunities to one tribe to the detriment of another; an order declaring that it was arbitrary, capricious, an abuse of discretion and not in accordance with the law for defendant Secretary to allow an eleventh-hour revision to the Second Amendment without proper consultation; an order declaring the actions of defendant Secretary arbitrary, capricious, an abuse of discretion and not in accordance with the law in considering legal arguments to support a compact approval; and an order declaring the invalidity of the provision in Paragraph 16 that interfere's with a third-party tribe's right to an unobstructed § 2719(B)(1)(a) review.

## OPINION

### A.  *Final Agency Action*

▮ Section 704 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, subjects agency action to judicial review when it is "made reviewable by statute" or when it is a "final agency action for which there is no other adequate remedy in a court." Recognizing that inaction rather than action is at issue in this case, plaintiffs argue that inaction can be the equivalent of action in three particular situations: where an agency has a duty to act and has delayed unreasonably in fulfilling that duty, where the agency is being recalcitrant in the face of a duty to act and when the agency's inaction is effectively final action that is not acknowledged. *Sierra Club v. Thomas,* 828 F.2d 783, 793–94 (D.C.Cir.1987). Plaintiffs are correct about this general principle but not about its application to this case.

The questions of unreasonable delay and recalcitrance do not arise because Congress anticipated them in writing the statute. In 25 U.S.C. § 2710(d)(8)(C), it provided that if the Secretary does not approve or disapprove a compact within 45 days of its submission, "the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter."

Plaintiffs contend that defendant Secretary's inaction is action under the third possibility set out in *Thomas:* "effectively final action not acknowledged." Although this category comes a little closer to describing defendant's lack of action, it does not come close enough to fit. The inaction at issue was not unacknowledged and therefore, left no one in a state of limbo. Plaintiffs do need the court's assistance in determining what happened.

More of an obstacle than the lack of a category, however, is the unsuitability of judicial review to the kind of inaction at issue. When Congress says expressly that it wants amendments not approved within 45 days to be deemed approved, it has provided a remedy and left nothing for a court to review. The court cannot send the matter back to the agency for further consideration without interfering with the congressional scheme. Moreover, the court would have no standards by which to judge whether the Secretary acted arbitrarily and capriciously by not acting. The statute says nothing about what she is to consider in making her decision.

The specific relief that plaintiffs are seeking is a determination that certain provisions of Paragraph 16 are void. Under the congressional scheme embodied in the Indian Gaming Regulatory Act, the Secretary has no authority to approve or disapprove parts of a proposed amendment. Her authority is limited to approving or disapproving the amendment as a whole (or choosing not to act and letting it take effect by operation of law). To the extent that plaintiffs are contending that defendant Secretary acted improperly by allowing the revision of Paragraph 16 or in considering "affirmative defense legal arguments," Plts.' Cpt., dkt. # 22, at 3, they are not challenging a final agency action. I conclude that plaintiffs have failed to state a claim upon which relief may be granted.

Plaintiffs' failure to state a claim is a sufficient ground on which to dismiss their complaint. For the sake of completeness, however, I will consider defendants' other arguments.

### B.  *Necessity of Adding State of Wisconsin and Ho–Chunk Nation as Parties*

▮ The Ho–Chunk Nation sought and obtained leave to intervene pursuant to Fed.R.Civ.P. 24 in order to move to dismiss the case. The standards for granting leave to intervene as a party are essential-

ly the same as the requirements for determining whether a party is to be joined if feasible set out in Fed.R.Civ.P. 19(a). A person is to be joined as a party to a lawsuit if complete relief cannot be accorded among those already parties in the person's absence; the person claims an interest relating to the subject matter of the lawsuit and if he is not made a party, either he will not be able to protect his interest or the existing parties will be subject to a substantial risk of incurring multiple or otherwise inconsistent obligations.

It is not necessary to decide whether the Nation meets the requirements of Rule 19(a). It was granted leave to intervene under Fed.R.Civ.P. 24 because it had demonstrated that it had a sufficient interest in the outcome of the litigation that might be substantially impaired by the disposition of the action in its absence.

■ Plaintiffs argue that the Nation waived its sovereign immunity by moving to intervene. They cite James Moore, *Moore's Federal Practice* § 24.16(6), at 24–671 (2d ed.1981) (deleted from the third edition),for the proposition that a party granted leave to intervene "makes himself vulnerable to complete adjudication by the federal court of the issues in litigation between the intervenor and the adverse party." Whether this rule is true in general, it is not true with respect to entities that have sovereign immunity. Those entities may intervene for a limited purpose such as moving to dismiss the lawsuit for failure to join an indispensable party without waiving their sovereign immunity. *Zych v. Wrecked Vessel Believed To Be The Lady Elgin,* 960 F.2d 665, 667–68 (7th Cir.1992) (state of Illinois did not waive sovereign immunity by intervening in order to move for dismissal of suit); *McClendon v. United States,* 885 F.2d 627, 630 (9th Cir.1989) ("'terms of [a sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit'")

(quoting *Jicarilla Apache Tribe v. Hodel,* 821 F.2d 537, 539 (10th Cir.1987) (quoting in turn *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976))). The Ho–Chunk Nation moved for intervention for the purpose of challenging the court's jurisdiction on the ground that the Nation was an indispensable party. Notice of App., dkt. # 6, at 2. Its consent to be sued is limited to a determination of the sole issue on which it moved to intervene. It has not waived its sovereign immunity as it relates to any other issue.

If the grant of intervention were not enough to establish that the Nation is a necessary party to this litigation, the Nation has shown that it is a party to a contract that plaintiffs want voided or at least modified. It is obvious from this fact that the Nation's interests are at stake. Plaintiffs argue that they want only to void one portion of the contract and that their doing so would not have much effect upon the parties to the contract and even if it did, the parties would be free to re-negotiate. This argument cannot be taken seriously. The state and the Nation negotiated a contract made up of many parts. If one part is changed or deleted the entire contract is changed. One side or the other will lose some aspect of the contract for which it bargained. It is for this reason that courts require that the parties to a contract be joined in any suit brought upon that contract.

The Nation's interests cannot be protected by the federal defendants in a suit in which federally recognized Indian tribes are on both sides of the litigation because defendants have a trust responsibility to *all* such tribes. They cannot be asked to represent one tribe in an action against other tribes.

The same reasoning applies with respect to the State of Wisconsin. As the other

party to the compact, the state has an obvious interest in this law suit. If it is not added to the suit, it will be unable to protect its interests in the compact.

### C. *Indispensability of Parties*

■ Neither the State of Wisconsin nor the Ho–Chunk Nation can be joined as parties without their consent. As a sovereign state, Wisconsin possesses common law immunity from suit. *Blatchford v. Native Village of Noatak and Circle Village,* 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1995) (state's sovereign immunity protects it from suits brought by individuals or by sovereign Indian tribes). As an Indian tribe, the Nation possesses the common law immunity from suit that sovereign powers traditionally enjoy. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). When sovereign immunity is asserted and not waived, a court has no choice but to recognize it. *California v. Quechan Tribe of Indians,* 595 F.2d 1153, 1155 (9th Cir.1979). Neither the state nor the Nation has waived its immunity from suit in this case.

■ When a person is necessary to a suit but cannot be made a party, a court must consider whether the party is indispensable. Fed.R.Civ.P. 19(b). In making this determination the court must consider to what extent a judgment rendered in the person's absence might be prejudicial to the person or to those who are parties already; the extent to which relief could shaped to protect the missing party's interest either by protective provisions in the judgment or other measures; whether a judgment rendered in the person's absence will be adequate; and whether the plaintiff will have an adequate remedy if the suit is dismissed for nonjoinder.

Any judgment touching on the validity of the compact would be prejudicial to the Nation and to the state because of their strong interests as parties to the compact at issue. I can imagine no way by which the prejudice to these two entities can be lessened or avoided and plaintiffs have suggested none. Any judgment entered without the Nation's and the state's participation would be of no value, because the only issue to be decided is the one for which the state and the Nation are indispensable. It is true that plaintiffs will have no remedy if the action is dismissed for nonjoinder. In this case, that is not a significant problem; I have found that plaintiffs have no viable cause of action against defendants. However, the outcome would be no different if plaintiffs had a stronger case. The principle of sovereign immunity overrides plaintiffs' interests in suing. Therefore, I conclude that plaintiffs cannot proceed on their suit because they have failed to join indispensable parties.

### D. *Failure to Plead Reasons for Nonjoinder*

Defendant are correct that plaintiffs have failed to plead reasons for nonjoinder. However, this is a technical defect that could be cured by an amended complaint if there were not so many other reasons to dismiss this suit.

### E. *Lack of Standing*

■ Standing is a critical component of the case and controversy requirement of Article III. A party bringing suit must allege injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiffs have alleged only that defendant Secretary's inaction diminished the privileges of plaintiff tribes, presumably because the state might be less willing to approve off-reservation gaming applications if they have to indemnify the Ho–Chunk Nation before doing so or because the addition of the indemnification provi-

sion may delay the state in acting on any application by plaintiffs.

In fact, it was not defendant Secretary's action that diminished plaintiffs' privileges; if anything did, it was the decision of the state and the Ho–Chunk Nation to include the provision they did in their compact. However, it is questionable that plaintiffs have suffered any injury from anyone's act. They have not demonstrated that injury is certain to ensue from the operation of Paragraph 16. At this time, plaintiffs do not know that their applications for off-reservation fee-to-trust status will receive defendant Secretary's approval. That approval requires a finding that a gaming establishment will be in the best interest of the tribe and its members and another finding that such a gaming establishment would not be detrimental to the surrounding community. Assuming that approval comes, it will be necessary for the Governor of Wisconsin to concur in the approval; he may have reasons not to do so other than the indemnification requirement. In addition, it may be that the indemnification provision will never come into play if, for example, the land to be acquired is not close enough to the Ho–Chunk gaming establishment to pose a threat of competition. At least at this time, plaintiffs have not established that they are certain to incur an injury either as the result of defendant Secretary's inaction or by the operation of Paragraph 16. Because plaintiffs cannot demonstrate an actual or imminent injury, they cannot show they are entitled to any redress for it.

### F. *Conclusion*

Plaintiffs have failed to state a claim on which they can obtain relief, overcome defendants' showing that they have not joined entities whose presence is indispensable to this litigation or shown that they have sustained an injury as the result of any act of defendants that would give

them standing to bring this suit. I conclude, therefore, that this action must be dismissed.

### ORDER

IT IS ORDERED that the motions of defendants Gail Norton and the United States Department of the Interior and intervening defendant Ho–Chunk Nation to dismiss this suit are GRANTED.